Turney J.,
delivered the~ opinion of the court,
The act of 18G9-7~O~ ch~ 78, sec~ 2' (Thompson & Steger's St~atutes; sec. 3813 d)','provid'e8:
"In acl~ioiis: or proceedi~ngs by or' against e~oouter~ o~i' gua'i~düins, in which judgments may be renclemd or against them, neithei~ ~party shall b~ allowe4. to testify~ against the other as to any 4ranssetion with~ or: statsmen~t~ by~;'the testator,~ intestste~,; or ward, unlesa e~1ed' t~ t~stify thereto~ :by~ the opposites party, or. re-' ~quired to. testi~ t1~reto by the court."
By this enactment, we think the Legislature meant to disqualify a guardian from testifying against his ward in any action or proceeding involving the guardian's management of the ward's estate. We can conceive of no other national interpretation of that portion of the act which relates to guardians.
*102 What other transactions of the guardian can have been the objects ’ of the solicitude of the statute?
During the existence of the guardianship, the ward is a minor, and incapable of having any transaction with anybody, least of all with the guardian, under whose control he is, except for mere necessaries.
The statute cannot have been solicitous to disqualify the guardian from testifying about transactions with the ward which the ward was incapable of making. The intention must therefore have had reference to-the transactions of the guardian in the management of the ward’s estate.
These, indeed, are not in strictness transactions-“with” the ward; but they are such in a practical sense, as they affect the ward’s estate.
We think that the intention of the statute had reference to this class of transactions.
The same statute forbids .'parties to testify against the estates of decedents, whose mouths are closed. The ward is presumed to be incapable of speaking advisedly as to any transaction during his period of tutelage, while he was under the dominion and influence of the guardian, and saw everything with his. eyes. And the ward being incapable of testifying advisedly, the guardian is therefore disqualified.
The complainant here became of age on the 26th of April, 1866.'
The proof shows that the guardian, in this case, received in payment of indebtedness due to the ward’s estate, southern bank paper, when the guardian knew that it was rapidly declining in value, and when it *103 could not be loaned even without interest. That at the very time of its receipt, he had inquired of his merchant, and been informed that such funds could not be used nor loaned. Still, he received them, saying that he would do the best he could with them. That he loaned a part of the notes upon the express condition that they were to be returned if the borrower could not use them, and that a part of these were returned by the borrower, under this agreement.
No even plausible excuse is given for collecting the debts in the depreciated paper.
The defendant must be charged with par funds. He will be credited with whatever amounts were properly expended for his ward.
No interest will be allowed on either account, for three years, as it is apparent from the record, that for about that period, the funds, if good, could not have been safely loaned. The interest will cease about the 1st of June, 1862. For the residue of the .time, interest will be allowed.
Cooper will be allowed reasonable compensation for his services, at the time, and under the circumstances of risk and responsibility.
The' decree of the Chancellor will be modified in accordance with this opinion, and the case remanded for an account.
The defendant will pay the costs of this court, except the cost of the transcript, which is so badly made up that the clerk and master is entitled to no fees for it.